# TOWN OF SANDGATE v. TOWN OF RUPERT.

JANUARY TERM, 1894.

*Pauper. Support by one town within limits of another.*

In 1874, the pauper was ordered to remove from the plaintiff to the defendant town. Before he actually removed the defendant took charge of him, and supported him in plaintiff town until 1891. *Held,* that the residence of the pauper from 1874 was in legal effect in defendant town, that he was transient in plaintiff town, and that plaintiff could recover.

Assumpsit for the support of a pauper. Heard upon an agreed statement of facts at the June term, 1893, Bennington county, THOMPSON, J., presiding. Judgment *pro forma* for the plaintiff. The defendant excepts.

The name of the pauper was Fred Conkey, and the agreed statement of facts, so far as is material, was as follows :

"The said Conkey was thirty years old in July, 1892, was born in Hebron, in the state of New York, was the son of William Conkey, and grandson of Nathaniel Conkey. William Conkey died in Sandgate before June, 1874; his wife, the pauper's mother, had deceased about eight years before in the town of Arlington, at which place they were then living and keeping house, and Fred was then living with them. At the time William died he had no legal settlement in Sandgate under the then law. After the death of the pauper's mother, pauper lived some of the time with his grandfather in Sandgate, and some of the time in other places. Nathaniel Conkey came to Sandgate to live about

1877, and lived there to the time of his death, which was in 1892.

"Prior to living in Sandgate he had resided in Rupert, and his legal settlement was in Rupert at the time he moved to Sandgate. At the time of William's death his legal settlement was in Rupert.

"On the first day of July, A. D. 1874, at Sandgate, before William R. Hoyt and Walter B. Randall, justices of the peace, on complaint of Morehouse Hamilton, overseer of the poor of the town of Sandgate, a court of examination was held under the law at that time and pursuant thereto.

"It was among other things then and there adjudged by said court, that Frederick Conkey, the pauper in question, had come to reside in Sandgate, and had not gained a legal settlement therein; that he belonged to and had his legal settlement in the town of Rupert; that he ought to be removed to Rupert as required by law; and pursuant to law said court ordered and directed that he be removed to the said town of Rupert.

"Before the pauper was removed to Rupert under the order, the latter town, in said month of July, accepted him, and has supported him as a pauper from then until April 1, 1891. Rupert has so supported him by contract in the town of Sandgate substantially all the time in the family of Nathaniel Conkey. The pauper was, however, supported and kept a few weeks by Rupert in the town of Rupert. The pauper has always held himself subject to the direction of Rupert as to where he should be kept, and he has, while supported by Rupert, lived in Sandgate as stated, because it was more economical for Rupert to so support him there. The requisite notice, preliminary to bringing this suit, was given. The town of Rupert refused to support the pauper after April 1, 1891, and the town of Sandgate has supported him from that date to the date of the writ in this cause. Except as herein stated, the pauper never lived in the town of Rupert."

*Fayette Potter* for the defendant.

The pauper had no three years' residence in Rupert, nor was he transient in Sandgate. Hence the plaintiff cannot recover. *Worcester* v. *East Montpelier*, 61 Vt. 139.

· *O. M. Barber* for the plaintiff.

The residence of the pauper after 1874 was, in contempla-
tion of law, in the defendant town.   Certainly he had no
residence in the plaintiff town.   *Vershire* v. *Hyde Park,* 64
Vt. 638 ; *Barnet* v. *Ray,* 33 Vt. 211 ; *Leicester* v. *Brandon,*
65 Vt. 544.

START, J.   It appears from the agreed statement of
facts that the pauper in question was, on the first day of
July, 1874, ordered to remove to the defendant town.   Be-
fore he was removed the defendant accepted him and sup-
ported him in the plaintiff town, except for a few weeks
while he was supported in the defendant town by the de-
fendant, until April 1, 1891, when the defendant refused to
longer support him.   The pauper has always held himself
subject to the direction of the defendant as to where he
should be kept, and he lived in the plaintiff town while he
was being supported by the defendant, because it was more
economical for the defendant to support him there.   Upon
these facts it is held by a majority of the court that it is fair-
ly inferable that, while the pauper was being supported in
the defendant town by the defendant, he went to the plaintiff
town by the procurement of the defendant; that the case
falls within the rule laid down in *Leicester* v. *Brandon,* 65
Vt. 544, and that, in legal contemplation, the pauper's resi-
dence was in the defendant town when the defendant refused
to longer support him ; and that he was a transient person in
the plaintiff town, and therefore the plaintiff is entitled to
recover.

I do not concur in this holding.   It does not appear that
the pauper ever resided in the defendant town for three
years, maintaining himself and family.   In an action under
our statute relating to the support of paupers, I think that
no recovery can be had, unless it appears that the defendant

town is the town where the pauper last resided for three years, maintaining himself and family. No. 42, of the Acts of 1886, s. 13. I do not think it can fairly be presumed, from the fact that the pauper was supported for a few weeks by the defendant in the defendant town at some time between 1874 and 1891, that he went there and returned to the plaintiff town by the procurement of the defendant. I do not think that, in legal contemplation, the pauper's residence was in the defendant town when the defendant refused to longer provide for him, or that he was a transient person in the plaintiff town.

The pauper had come to the plaintiff town to reside when the order of removal was made. The order of removal conclusively establishes this fact. He has not since changed his residence, nor has he since come to want. Since he came to want in 1874 in the plaintiff town, his wants have been provided for by the plaintiff or defendant in the plaintiff town, with the exception of a few weeks while he was provided for by the defendant in the defendant town. His stay in the defendant town appears to have been temporary, and, in my judgment, there is nothing in the case that tends to show that he went there to reside. No question is, or can be made, but that he resided in the plaintiff town when he first came to want, and this residence is presumed to continue until the contrary is shown.

I think the case comes fairly within the rule laid down in *Worcester* v. *East Montpelier*, 61 Vt. 139, and *Chittenden* v. *Barnard*, 61 Vt. 145. In *Worcester* v. *East Montpelier*, *supra*, the pauper was supported by East Montpelier in the town of Worcester from some time in 1881 until No. 42, of the Acts of 1886, was passed. After the passage of this act, East Montpelier notified Worcester that it would not support him any longer, and it was held that Worcester could not recover for support thereafter furnished. In *Chittenden* v. *Barnard*, *supra*, the pauper had a legal settlement in Bar-

nard, and had resided there and been supported by Barnard. He went to Stockbridge to reside, and was there ordered to remove to Barnard. He then went to Chittenden and there came to want. Barnard was notified, and it assumed the burden of his support and provided for him in the town of Chittenden from April 1, 1884, to March 1, 1887, and then refused to further provide for him; and it was held that Chittenden could not recover for support thereafter furnished. See, also, *Vershire* v. *Hyde Park*, 64 Vt. 638, and *Londonderry* v. *Landgrove*, 66 Vt. 264, and the cases there cited.

*The pro forma judgment affirmed.*

Munson, J., prior to his election having advised in matters involved in the litigation, did not sit.

TAFT, J., concurs in the result upon the ground that the case shows the defendant took the pauper into Sandgate, and in contemplation of law the atmosphere of Rupert enveloped the pauper and he was residing in that town ever after, and for that reason was transient in Sandgate.